

DA 06-0710

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2007 MT 315N

IN RE THE MARRIAGE OF
REGINALD F. DALZELL,

   Defendant and Appellant,

 v.

STEPHANIE DUBRAVAC,

   Plaintiff and Appellee.

APPEAL FROM: District Court of the Eighteenth Judicial District,
      In and For the County of Gallatin, Cause No. DR-2004-160
      Honorable Mike Salvagni, Presiding Judge

COUNSEL OF RECORD:

   For Appellant:

   Derik Pomeroy, Attorney at Law, Bozeman, Montana

   For Appellee:

   Robin L. Weber, Weber Law Firm, Helena, Montana

         Submitted on Briefs: August 15, 2007

            Decided: December 4, 2007

Filed:

      _____
            Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(d)(v), Montana Supreme Court 1996 Internal Operating Rules, as amended in 2003, the following memorandum decision shall not be cited as precedent. It shall be filed as a public document with the Clerk of the Supreme Court and its case title, Supreme Court cause number and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 Reginald Dalzell (Dalzell) and Stephanie Dubravac (Dubravac) married in 1988 after several years of courtship and cohabitation. Prior to their marriage, they entered into a premarital agreement (Agreement). Upon dissolution, the Eighteenth Judicial District Court determined, among other things, that the Agreement was valid and enforceable and that it barred Dalzell from seeking maintenance or making any claims upon Dubravac's property. Dalzell appeals. We affirm.

## ISSUES

¶3 The followings issues were presented on appeal:

¶4 Did the District Court err when it determined that the premarital agreement barred either party from seeking maintenance?

¶5 Did the District Court err when it concluded the premarital agreement barred either party from claiming any assets of the other in the event of a divorce?

¶6 Did the District Court err when it upheld the premarital agreement but refused to award property to the husband listed in the agreement as his separate property?

¶7    Did the District Court err when it enforced the premarital agreement despite the evidence for the doctrine of laches?

¶8    Did the District Court err when it used child support as an offset for a debt between the parties for attorney fees?

## FACTUAL AND PROCEDURAL BACKGROUND

¶9    Dalzell and Dubravac began dating in California in the early 1980s and moved in together in 1984. In January 1988 Dubravac became pregnant with their first child. In April 1988 the couple married. Their first son was born in October 1988 and their second son was born in October 1990. During this time, Dalzell was an optician and Dubravac was a physician.

¶10    At the time the couple decided to marry, Dubravac knew that Dalzell's financial circumstances were in disarray. She knew that for several years he had failed to pay both his personal income taxes and employee taxes for his business. As a result of Dalzell's financial situation, prior to their marriage the parties entered into a premarital agreement. Dalzell's attorney drafted the Agreement, which was reviewed by Dubravac's attorney. Both parties testified that the intention of the Agreement was to protect Dubravac and her assets from Dalzell's IRS debt. Both parties signed the Agreement and initialed every page. Both attorneys signed the Agreement as well. Dalzell was advised of the consequences of the arrangement and that any change to the Agreement had to be in writing. Dubravac testified that she would not have married Dalzell without the benefit of the Agreement.

¶11 The couple moved from California to Bozeman in 1993. Dalzell worked as an optician for a period of time after moving but ultimately stopped working as an optician several years ago. He formed a band in 1998 which has taken up a great deal of his time. He reported that he also did bookkeeping work for the band and cleaned houses. He has not reported his income nor was Dubravac familiar with the amount of his earnings. He has not contributed to the family's expenses. He traveled extensively with the band, leaving Dubravac to work full-time, maintain the household and care for their two sons, one of whom has autism with its accompanying special needs.

¶12 During the marriage, Dalzell engaged in multiple irresponsible fiscal practices which included forging Dubravac's name to a car title and insurance check, writing numerous checks on his checking account without sufficient funds to cover them, borrowing $45,000 from Dubravac's retirement account and defaulting on the loan, and failing to pay his 1992 and 1993 income taxes. However, in keeping with the terms of the Agreement, the couple never co-mingled their funds, incurred a joint debt, or filed a joint tax return. Until they separated, the couple lived in a home exclusively in Dubravac's name and purchased with funds originating from one of her premarital assets.

¶13 In April 2004 Dubravac filed her Petition for Dissolution, and asked the court to divide the property pursuant to the Agreement. Subsequently, the parties reached agreement vis-à-vis a parenting plan but they looked to the District Court for an order distributing their assets. Dalzell presented numerous arguments to the District Court in an effort to defeat the application of the Agreement. Specifically, he asserted that he should receive maintenance from Dubravac, who at the time of dissolution had

4

considerable assets, because the Agreement did not address "in any form what happens if the parties divorce." In other words, he argued, because the Agreement did not address spousal support, alimony, or maintenance, the Agreement was ambiguous and he was entitled to maintenance. Additionally, he argued that the Agreement did not address distribution of property in the event of a divorce and therefore he was entitled to property belonging to Dubravac. He maintained as well that after the parties moved to Bozeman, he decided to forego earning an income in order to become the primary caregiver to the children, which is the reason he accumulated no assets and became financially dependent upon Dubravac.

¶14 Dubravac countered Dalzell's testimony concerning child care, maintaining that Dalzell spent his time with his band and pursuing other personal interests, and did not stay at home with the children as he claimed. She also testified that during the entire marriage, the parties lived by the terms of the Agreement by keeping all finances and financial decisions separate, and therefore maintained that the Agreement should be enforced.

¶15 In February 2006 the District Court concluded that the Agreement should be construed according to California law, as provided in the document, but that Montana law applied as to the validity and enforcement of the Agreement. In a comprehensive, well-reasoned thirty-two page order, the District Court concluded that Dalzell had failed to prove that the Agreement was invalid and/or unenforceable. The court noted that the Agreement was designed to keep the assets and property of the parties separate and that, though it did lack specific language addressing divorce, the Agreement nonetheless

5

barred either party from seeking maintenance or from claiming any assets of the other party. The court relied on the following language from the Agreement:

> All property of any kind, wherever situated, acquired by or belonging to each of the parties before their marriage or thereafter acquired by gift or inheritance, the earnings and profits thereon, and the earnings from the personal efforts of each party, including but not limited to the business or practice of either Husband as an optician, or Wife as a physician, and any Goodwill associated with each respective business or practice, shall be the separate property of each of the parties owning, acquiring or earning the same.

> Husband and Wife agree that there shall not be any community property created during their marriage, unless the intent to establish property as community is clearly set forth by the form of title to such property and in a written instrument executed by both of the parties. Husband and Wife further agree that each party relinquishes, disclaims and releases any and all right, claim or interest, actual, inchoate or contingent, in law and in equity, which he or she may acquire in the separate property of the other by reasons of the proposed marriage, including but not limited to: . . . (c) the right to a family allowance . . . .

Additionally, the court held that Dubravac was the prevailing party with respect to the question of enforceability of the Agreement, and under the Agreement was entitled to reasonable attorney's fees. Finally, the order instructed the parties to participate in mediation in an attempt to resolve some of the outstanding issues relative to the impending dissolution.

¶16 In September 2006 the court issued its Findings of Fact, Conclusions of Law and Decree of Dissolution of Marriage. In the Dissolution Decree, the court held, among other things, that an automobile claimed by Dalzell was actually Dubravac's property by virtue of a title transfer during the marriage. Additionally, the court noted that Dalzell owed Dubravac certain monies and that Dubravac owed Dalzell back child support. The

6

District Court therefore offset these monies resulting in Dalzell owing Dubravac approximately $5,400. In most other respects, the court enforced the terms of the Agreement, precluding Dalzell's attempts to recover maintenance and a portion of Dubravac's assets. We conclude it is not necessary for the purposes of this disposition to further detail the court's findings.

¶17 Dalzell appeals.

## STANDARD OF REVIEW

¶18 We review a district court's division of marital property and maintenance awards to determine whether the findings of fact upon which the division and award are based are clearly erroneous. A district court's findings are clearly erroneous if they are not supported by substantial evidence, if the court misapprehended the effect of evidence, or if our review of the record convinces us that the court made a mistake. Absent clearly erroneous findings, this Court will affirm a district court's division of property and award of maintenance unless we identify an abuse of discretion. *In re Marriage of Payer*, 2005 MT 89, ¶ 9, 326 Mont. 459, ¶ 9, 110 P.3d 460, ¶ 9 (citations omitted).

## DISCUSSION

¶19 We need not address Dalzell's issues individually. Under the Uniform Premarital Agreement Act, §§ 40-2-601-610, MCA, Dalzell, as challenger, bore the burden of proving that the Agreement was invalid. The court analyzed the arguments presented by Dalzell seeking to invalidate the Agreement and rejected them with findings that are supported by the record and a correct interpretation of the applicable law. Likewise, the findings and conclusions of the court issued in connection with the Decree of Dissolution

7

are also supported by the record and the law. We have determined to decide this case pursuant to Section 1, Paragraph 3(d) of our 1996 Internal Operating Rules, as amended in 2003, which provides for memorandum opinions. It is manifest on the record before us that the findings of fact are supported by substantial evidence, and the legal issues are clearly controlled by settled Montana law which the District Court correctly interpreted; therefore, there was no abuse of discretion by the District Court.

¶20    We affirm the judgment of the District Court.


/S/ PATRICIA COTTER


We Concur:

/S/ KARLA M. GRAY
/S/ JIM RICE
/S/ BRIAN MORRIS
/S/ JOHN WARNER